——— FILED   ——— ENTERED
——— LODGED   ——— RECEIVED

NOV 1 2024

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY
DEPUTY

## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN RYAN,<br><br>Defendant. | NO. CR24-213-JNW<br><br>**PLEA AGREEMENT** |

The United States, through United States Attorney Tessa M. Gorman and Assistant United States Attorney Amanda McDowell of the Western District of Washington, and John Ryan and his attorney Todd Maybrown enter into the following Plea Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).

1.    **Waiver of Indictment.** Defendant, having been advised of the right to be charged by Indictment, agrees to waive that right and enter a plea of guilty to the charge brought by the United States Attorney in an Information.

Plea Agreement - 1
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      2.    **The Charge.** Defendant, having been advised of the right to have this

2   matter tried before a jury, agrees to waive that right and enters a plea of guilty to the

3   following charge contained in the Information.

4           a.    Conspiracy to Commit Wire Fraud, as charged in Count 1, in

5           violation of Title 18, United States Code, Section 1349.

6      By entering this plea of guilty, Defendant hereby waives all objections to the form

7   of the charging document. Defendant further understands that before entering any guilty

8   plea, Defendant will be placed under oath. Any statement given by Defendant under oath

9   may be used by the United States in a prosecution for perjury or false statement.

10     3.    **Elements of the Offense.** The elements of the offense to which Defendant

11  is pleading guilty are as follows:

12          a.    The elements of Conspiracy to Commit Wire Fraud, as charged in

13          Count 1, are as follows:

14              *First*, two or more persons agreed to commit the crime of wire fraud, as set

15              forth below;

16              *Second*, the defendant knew of the unlawful purpose of the agreement; and

17              *Third*, the defendant knowingly joined into the agreement with the specific

18              intent to defraud.

19          b.    The elements of Wire Fraud (the object of the conspiracy) are as

20          follows:

21              *First,* the defendant knowingly participated in, devised, or intended to

22              devise a scheme or plan to defraud for the purpose of obtaining money or

23              property by means of false or fraudulent pretenses, representations or

24              promises, or omitted facts;

25              *Second,* the statements made or facts omitted were material; that is, they

26              had a natural tendency to influence a person to part with money or

27              property;

Plea Agreement - 2
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Third,* the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

*Fourth,* the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

4.    **The Penalties.** Defendant understands that the statutory penalties applicable to the offense to which Defendant is pleading guilty are as follows:

a.    For the offense of Conspiracy to Commit Wire Fraud, as charged in Count 1:  A maximum term of imprisonment of up to 20 years, a fine of up to $250,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100 dollars.  If a probationary sentence is imposed, the probation period can be for up to five years.

Defendant understands that supervised release is a period of time following imprisonment during which Defendant will be subject to certain restrictive conditions and requirements. Defendant further understands that, if supervised release is imposed and Defendant violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that the consequences of pleading guilty may include the forfeiture of certain property, either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further

Plea Agreement - 3
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | agrees to submit a completed Financial Disclosure Statement as requested by the United

2 | States Attorney's Office.

3 |      Defendant understands that, if pleading guilty to a felony drug offense, Defendant

4 | will become ineligible for certain food stamp and Social Security benefits as directed by

5 | Title 21, United States Code, Section 862a.

6 |      5.    **Immigration Consequences.** Defendant recognizes that pleading guilty

7 | may have consequences with respect to Defendant's immigration status if Defendant is

8 | not a citizen of the United States. Under federal law, a broad range of crimes are grounds

9 | for removal, and some offenses make removal from the United States presumptively

10 | mandatory. Removal and other immigration consequences are the subject of a separate

11 | proceeding, and Defendant understands that no one, including Defendant's attorney and

12 | the Court, can predict with certainty the effect of a guilty plea on immigration status.

13 | Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any

14 | immigration consequences that Defendant's guilty plea may entail, even if the

15 | consequence is Defendant's mandatory removal from the United States.

16 |      6.    **Rights Waived by Pleading Guilty.** Defendant understands that by

17 | pleading guilty, Defendant knowingly and voluntarily waives the following rights:

18 |           a.    The right to plead not guilty and to persist in a plea of not guilty;

19 |           b.    The right to a speedy and public trial before a jury of Defendant's

20 | peers;

21 |           c.    The right to the effective assistance of counsel at trial, including, if

22 | Defendant could not afford an attorney, the right to have the Court appoint one for

23 | Defendant;

24 |           d.    The right to be presumed innocent until guilt has been established

25 | beyond a reasonable doubt at trial;

26 |           e.    The right to confront and cross-examine witnesses against Defendant

27 | at trial;

Plea Agreement - 4
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    f.    The right to compel or subpoena witnesses to appear on Defendant's

2    behalf at trial;

3    g.    The right to testify or to remain silent at trial, at which trial such

4    silence could not be used against Defendant; and

5    h.    The right to appeal a finding of guilt or any pretrial rulings.

6    7.    **United States Sentencing Guidelines.** Defendant understands and

7    acknowledges that the Court must consider the sentencing range calculated under the

8    United States Sentencing Guidelines and possible departures under the Sentencing

9    Guidelines together with the other factors set forth in Title 18, United States Code,

10    Section 3553(a), including: (1) the nature and circumstances of the offense; (2) the

11    history and characteristics of Defendant; (3) the need for the sentence to reflect the

12    seriousness of the offense, to promote respect for the law, and to provide just punishment

13    for the offense; (4) the need for the sentence to afford adequate deterrence to criminal

14    conduct; (5) the need for the sentence to protect the public from further crimes of

15    Defendant; (6) the need to provide Defendant with educational and vocational training,

16    medical care, or other correctional treatment in the most effective manner; (7) the kinds

17    of sentences available; (8) the need to provide restitution to victims; and (9) the need to

18    avoid unwarranted sentence disparity among defendants involved in similar conduct who

19    have similar records. Accordingly, Defendant understands and acknowledges that:

20    a.    The Court will determine Defendant's Sentencing Guidelines range

21    at the time of sentencing;

22    b.    After consideration of the Sentencing Guidelines and the factors in

23    18 U.S.C. 3553(a), the Court may impose any sentence authorized by law, up to the

24    maximum term authorized by law;

25    c.    The Court is not bound by any recommendation regarding the

26    sentence to be imposed, or by any calculation or estimation of the Sentencing Guidelines

27

Plea Agreement - 5
*United States v. Ryan, et al.*, CR24-213-JNW

1  range offered by the parties or the United States Probation Department, or by any

2  stipulations or agreements between the parties in this Plea Agreement; and

3          d.      Defendant may not withdraw a guilty plea solely because of the

4  sentence imposed by the Court.

5          8.      **Ultimate Sentence.** Defendant acknowledges that no one has promised or

6  guaranteed what sentence the Court will impose.

7          9.      **Statement of Facts.** Defendant admits Defendant is guilty of the charged

8  offense. The parties agree on the following facts:

9          a.      ***Background***:  Amanda McAfee-Ryan is the former office manager

10  of a dental practice (the "Victim Company") owned by Dr. KL.  The Victim Company

11  has dental office locations in Shoreline, Washington and Lynnwood, Washington.

12          b.      McAfee-Ryan began working at the Victim Company as a

13  receptionist in 2005 and later transitioned to office manager in 2007.  She is a resident of

14  Lynnwood, Washington.

15          c.      As office manager for the Victim Company, McAfee-Ryan was

16  responsible for initiating the payroll process for employees through Paychex, the third-

17  party vendor used by the Victim Company to handle payroll and 401(k) benefits for

18  employees.  McAfee-Ryan was also the administrator for the Victim Company's

19  insurance plan through United Healthcare and ensured that the Victim Company's

20  employees received appropriate medical benefits.

21          d.      McAfee-Ryan paid the Victim Company's bills, including those

22  related to any office expenses.

23          e.      John Ryan is Amanda McAfee-Ryan's boyfriend and worked as a

24  temporary dental hygienist for the Victim Company between 2014 through 2015.  He is a

25  resident of Woodinville, Washington.

26

27

Plea Agreement - 6
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

f.     Ryan ceased working for the Victim Company no later than January 2016. McAfee-Ryan continued to work for the Victim Company until at least October 2023.

g.     ***The Conspiracy***: Between 2016 and 2023, McAfee-Ryan and Ryan agreed to commit the offense of wire fraud in violation of 18 U.S.C. § 1343. McAfee-Ryan and Ryan devised a scheme to obtain the Victim Company's money, by means of materially false and fraudulent representations and omissions about the Victim Company's payroll and the state of its finances. McAfee-Ryan and Ryan agreed that, to execute the scheme to defraud, they would transmit and cause to be transmitted wire communications in interstate commerce. McAfee-Ryan and Ryan knowingly joined into the agreement with the specific intent to defraud the Victim Company.

h.     McAfee-Ryan and Ryan agreed to embezzle, and did embezzle, over $890,000.00 of the Victim Company's funds for their own personal benefit between 2016 and 2023.

i.     At all times relevant to the offense, McAfee-Ryan and Ryan acted with the intent to defraud.

j.     ***Wages and Benefits to John Ryan:***  Between 2016 and 2023, McAfee-Ryan and Ryan agreed to steal the Victim Company's funds by diverting salary payments and employee benefits to Ryan when he was no longer working for the Victim Company.

k.     In her role as office manager, McAfee-Ryan submitted false payroll entries for Ryan to Paychex, which contained misrepresentations regarding the number of hours worked by Ryan and falsely claimed he was a full-time employee.

l.     These fraudulent payroll entries induced the Victim Company to use its funds to pay Ryan gross wages that he never earned.

m.     Ryan provided his personal bank account and identity, both of which were necessary to receive the direct deposits for the fraudulently-obtained salary

Plea Agreement - 7
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  payments.  Ryan accepted the payments while knowing he was no longer working for the
2  Victim Company.

3          n.      In all, between 2016 and 2023, McAfee-Ryan and Ryan worked
4  together to steal at least $780,150.80 of the Victim Company's funds by misrepresenting
5  that Ryan was a full-time employee and causing wages to be deposited into Ryan's bank
6  account.

7          o.      The fraudulent payroll entries submitted by McAfee-Ryan for
8  Ryan's fake employment also caused Paychex to automatically remit to the IRS the
9  required FICA employer tax for Ryan's payroll.

10         p.      In all, between 2016 and 2023, McAfee-Ryan and Ryan caused
11  $59,681.50 of the Victim Company's funds to be used to pay the FICA employer tax for
12  the wages paid to Ryan while he was no longer an employee at the Victim Company.

13         q.      In her role as office manager, McAfee-Ryan was also the
14  administrator of the Victim Company's health insurance plan through United Healthcare.
15  By misrepresenting that Ryan was an employee of the Victim Company, McAfee-Ryan
16  and Ryan directed medical and vision benefits to Ryan, which were paid for by the
17  Victim Company.

18         r.      Ryan provided his identity as a fake employee to receive these
19  healthcare benefits.

20         s.      In all, between 2016 and 2023, McAfee-Ryan and Ryan stole at least
21  $43,040.13 of the Victim Company's funds to provide Ryan with healthcare benefits he
22  was not entitled to.

23         t.      Between 2020 and 2023, McAfee-Ryan and Ryan also diverted at
24  least $8,225.28 of the Victim Company's funds towards Ryan's 401(k) through the
25  Victim Company's 401(k) matching program.  By misrepresenting that Ryan was a full-
26  time employee, McAfee-Ryan and Ryan caused the Victim Company to pay these funds
27  into Ryan's 401(k).

Plea Agreement - 8
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          u.    In 2023, McAfee-Ryan and Ryan agreed that Ryan would cash out

2    his 401(k).  In particular, Ryan informed McAfee-Ryan that he wanted the funds from his

3    401(k) so that he could be "debt free," pay off a personal loan, and put as much money

4    into his investments, including cryptocurrency investments, as possible.

5          v.    All of these payments and benefits were provided to Ryan using the

6    Victim Company's funds and were provided to Ryan when he was no longer working for

7    the Victim Company.

8          w.    McAfee-Ryan and Ryan used the funds and benefits they stole to

9    fund their lifestyle together.

10         x.    In furtherance of their scheme, McAfee-Ryan and Ryan agreed that

11   McAfee-Ryan would use her trusted position as Dr. KL's longtime office manager to

12   gain Dr. KL's trust and ensure their scheme remained undetected.

13         y.    McAfee-Ryan and Ryan discussed the fact that McAfee-Ryan would

14   refuse to account for Ryan's salary when she worked with the Victim Company's

15   accountant on taxes.

16         z.    McAfee-Ryan and Ryan also agreed that McAfee-Ryan would

17   "explain away some things" when questioned about the Victim Company's finances.

18         aa.    To avoid detection, McAfee-Ryan lied to Dr. KL about the state of

19   the Victim Company's finances, including by making misrepresentations that the Victim

20   Company had no money.

21         bb.    McAfee-Ryan also intentionally failed to disclose Ryan was getting

22   paid as employee when she listed off the names of employees to Dr. KL.

23         cc.    These misrepresentations, and others, induced the Victim Company

24   to continue paying McAfee-Ryan and Ryan funds they were not entitled to and allowed

25   the scheme to remain undetected for many years.

26

27

Plea Agreement - 9
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1         dd.    **Loss Amount:** The parties agree that, between 2016 and 2023,

2 McAfee-Ryan and Ryan caused Victim Company to pay a total of $891,097.71 as a result

3 of their fraudulent scheme.

4         ee.    **Use of Interstate Wires:** The conspiracy involved the use of

5 interstate wire communications to accomplish the fraud.

6         ff.    Between 2016 and 2023, McAfee-Ryan and Ryan agreed to use

7 interstate wires originating in Washington State to Paychex's servers in New York in

8 order to initiate Ryan's payroll entries.

9    The parties agree that the Court may consider additional facts contained in the

10 Presentence Report (subject to standard objections by the parties) and/or that may be

11 presented by the United States or Defendant at the time of sentencing, and that the factual

12 statement contained herein is not intended to limit the facts that the parties may present to

13 the Court at the time of sentencing.

14    10.    **Sentencing Factors.** The parties agree that the following Sentencing

15 Guidelines provisions apply to this case:

16         a.    A base offense level of 7, pursuant to USSG § 2B1.1(a)(1);

17         b.    An increase of 14 points because the fraud loss from the offense

18 exceeded $550,000 but was less than $1,500,000, pursuant to USSG § 2B1.1(b)(1)(I).

19    The parties agree they are free to present arguments regarding the applicability of

20 all other provisions of the United States Sentencing Guidelines. Defendant understands,

21 however, that at the time of sentencing, the Court is free to reject these stipulated

22 adjustments, and is further free to apply additional downward or upward adjustments in

23 determining Defendant's Sentencing Guidelines range.

24    11.    **Acceptance of Responsibility.** At sentencing, if the Court concludes

25 Defendant qualifies for a downward adjustment for acceptance of responsibility pursuant

26 to USSG § 3E1.1(a) and Defendant's offense level is 16 or greater, the United States will

27 make the motion necessary to permit the Court to decrease the total offense level by three

Plea Agreement - 10
*United States v. Ryan, et al.*, CR24-213-JNW

1  levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United

2  States by timely notifying the United States of Defendant's intention to plead guilty,

3  thereby permitting the United States to avoid preparing for trial and permitting the Court

4  to allocate its resources efficiently.

5      12.    **Zero-Point Offender Eligibility.** Defendant may be eligible for a

6  sentencing adjustment pursuant to the Zero-Point Offender provisions at USSG

7  § 4C1.1(a)(1)-(10).  If, at the time of sentencing, the United States is satisfied Defendant

8  has met each of the ten requirements, the United States will recommend a two-level

9  reduction to Defendant's sentencing calculation pursuant to USSG § 4C1.1(a).

10  Defendant understands, however, that the Court will ultimately decide whether Defendant

11  qualifies as a Zero-Point Offender.

12      13.    **Agreed Recommendation Regarding Imprisonment.** Pursuant to Federal

13  Rule of Criminal Procedure 11(c)(1)(B), the parties jointly agree to recommend that the

14  appropriate sentence to be imposed by the Court at the time of sentencing is a term of

15  probation of four years.  Defendant understands that this recommendation is not binding

16  on the Court and the Court may reject the recommendation of the parties and may impose

17  any term of imprisonment up to the statutory maximum penalty authorized by law.

18  Defendant further understands that Defendant cannot withdraw a guilty plea simply

19  because of the sentence imposed by the Court.  Except as otherwise provided in this Plea

20  Agreement, the parties are free to present arguments regarding any other aspect of

21  sentencing.

22      14.    **Restitution.** Defendant shall make restitution to the Victim Company in the

23  amount of its economic loss as determined by the Court at the time of sentencing, which

24  is at least $891,097.71, with credit for any amounts already paid by Defendant or other

25  entities.  Defendant agrees to preserve the balance of his 401(k) account associated with

26  Dr. KL's practice (Plan #278622) by taking no further withdrawals and apply it towards

27  the restitution owed no later than 30 days after sentencing.

Plea Agreement - 11
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          a.     The full amount of restitution shall be due and payable immediately

2    on entry of judgment and shall be paid as quickly as possible.  If the Court finds that the

3    defendant is unable to make immediate restitution in full and sets a payment schedule as

4    contemplated in 18 U.S.C. § 3664(f), Defendant agrees that the Court's schedule

5    represents a minimum payment obligation and does not preclude the U.S. Attorney's

6    Office from pursuing any other means by which to satisfy Defendant's full and

7    immediately-enforceable financial obligation, including, but not limited to, by pursuing

8    assets that come to light only after the district court finds that Defendant is unable to

9    make immediate restitution.

10          b.     Defendant agrees to disclose all assets in which Defendant has any

11   interest or over which Defendant exercises control, directly or indirectly, including those

12   held by a spouse, nominee, or third party.  Defendant agrees to cooperate fully with the

13   United States' investigation identifying all property in which Defendant has an interest

14   and with the United States' lawful efforts to enforce prompt payment of the financial

15   obligations to be imposed in connection with this prosecution.  Defendant's cooperation

16   obligations are: (1) before sentencing, and no more than 30 days after executing this Plea

17   Agreement, truthfully and completely executing a Financial Disclosure Statement

18   provided by the United States Attorney's Office and signed under penalty of perjury

19   regarding Defendant's and Defendant's spouse's financial circumstances and producing

20   supporting documentation, including tax returns, as requested; (2) providing updates with

21   any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven

22   days of the event giving rise to the changed circumstances; (3) authorizing the United

23   States Attorney's Office to obtain Defendant's credit report before sentencing; (4)

24   providing waivers, consents or releases requested by the U.S. Attorney's Office to access

25   records to verify the financial information; (5) authorizing the U.S. Attorney's Office to

26   inspect and copy all financial documents and information held by the U.S. Probation

27   Office; (6) submitting to an interview regarding Defendant's Financial Statement and

Plea Agreement - 12
*United States v. Ryan, et al.*, CR24-213-JNW

1   supporting documents before sentencing (if requested by the United States Attorney's

2   Office), and fully and truthfully answering questions during such interview; and (7)

3   notifying the United States Attorney's Office before transferring any interest in property

4   owned directly or indirectly by Defendant, including any interest held or owned in any

5   other name, including all forms of business entities and trusts.

6          c.     The parties acknowledge that voluntary payment of restitution prior

7   to the adjudication of guilt is a factor the Court considers in determining whether

8   Defendant qualifies for acceptance of responsibility pursuant to USSG § 3E1.1(a).

9        15.   **Forfeiture of Assets.**  Defendant understands the forfeiture of property is

10   part of the sentence that must be imposed in this case.  Defendant agrees to forfeit to the

11   United States immediately Defendant's right, title, and interest in any and all property,

12   real or personal, which constitutes, or is derived from, proceeds traceable to the offense

13   of *Conspiracy to Commit Wire Fraud*, as charged in Count 1.  All such property is

14   forfeitable pursuant to 18 U.S.C. § 981(a)(1)(C), by way of 28 U.S.C. § 2461(c), and

15   includes, but is not limited to, a judgment for a sum of money (also known as a forfeiture

16   money judgment) in the amount of at least $441,340.81, representing the proceeds that

17   Defendant received from his commission of *Conspiracy to Commit Wire Fraud*. This

18   sum of money is based upon half of the wages that Defendant and codefendant Amanda

19   McAfee-Ryan fraudulently obtained from the Victim Company, and which Defendant

20   and codefendant used to fund their lifestyle together, plus the above-described health care

21   benefits and the 401(k) contributions that Defendant received from their scheme.

22        Defendant understands and acknowledges that any property forfeited will be

23   separate and distinct from any restitution that is ordered in this case.  Defendant further

24   understands and acknowledges to request restoration, the United States Attorney's Office

25   (the "USAO") must send a request to the Money Laundering and Asset Recovery Section

26   ("MLARS") of the Department of Justice, that includes the representations outlined in the

27   Asset Forfeiture Policy Manual (2023), Chapter 14, Sec. II.B. and 28 C.F.R. Part 9.8,

Plea Agreement - 13
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    which are summarized as follows: (i) all known victims have been properly notified of

2    the restitution proceedings and are properly accounted for in the restitution order; (ii) to

3    the best of the USAO's knowledge and belief after consultation with the seizing agency,

4    the losses described in the restitution order have been verified, comport with the

5    remission requirements, and reflect all sources of compensation received by the victims,

6    including returns on investments, interest payments, insurance proceeds, refunds,

7    settlement payments, lawsuit awards, and any other sources of compensation for their

8    losses; (iii) to the best of the USAO's knowledge and belief after consultation with the

9    seizing agency, reasonable efforts to locate additional assets establish that the victims do

10    not have recourse reasonably available to obtain compensation for their losses from other

11    assets, including those owned or controlled by the defendant(s); and (iv) there is no

12    evidence to suggest that any of the victims knowingly contributed to, participated in,

13    benefitted from, or acted in a willfully blind manner, toward the commission of the

14    offenses underlying the forfeiture or a related offense. The USAO agrees that if it can

15    make these required representations, then the USAO will submit a restoration request to

16    MLARS, seeking approval for any assets forfeited to be restored to the victims in this

17    case, which may, in turn, satisfy in full or part any restitution order. Defendant further

18    understands and acknowledges that the Attorney General, or his/her designee, has the

19    sole discretion to approve or deny the restoration request. The United States also agrees

20    that the amount Defendant pays toward restitution will be credited against this forfeited

21    sum.

22          Defendant agrees to fully assist the United States in the forfeiture of the above-

23    described property and to take whatever steps are necessary to pass clear title to the

24    United States, including but not limited to: surrendering title and executing any

25    documents necessary to effect forfeiture; assisting in bringing any property located

26    outside the United States within the jurisdiction of the United States; and taking whatever

27    steps are necessary to ensure that property subject to forfeiture is not sold, disbursed,

Plea Agreement - 14
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file

2  a claim to any such property in any federal forfeiture proceeding, administrative or

3  judicial, which may be or has been initiated.  Defendant also agrees he will not assist any

4  party who may file a claim to this property in any federal forfeiture proceeding.

5       The United States reserves its right to proceed against any remaining property not

6  identified in this Plea Agreement, including any property in which Defendant has any

7  interest or control, if that property constitutes proceeds, or was derived from proceeds, of

8  the *Conspiracy to Commit Wire Fraud* charged in Count 1.

9       16.    **Abandonment of Contraband.** Defendant also agrees that, if any federal

10 law enforcement agency seized any illegal contraband that was in Defendant's direct or

11 indirect control, Defendant consents to the federal administrative disposition, official use,

12 and/or destruction of that contraband.

13       17.    **Non-Prosecution of Additional Offenses.** As part of this Plea Agreement,

14 the United States Attorney's Office for the Western District of Washington agrees not to

15 prosecute Defendant for any additional offenses known to it as of the time of this Plea

16 Agreement based upon evidence in its possession at this time, and that arise out of the

17 conduct giving rise to this investigation.  In this regard, Defendant recognizes the United

18 States Attorney's Office for the Western District of Washington has agreed not to

19 prosecute all of the criminal charges the evidence establishes were committed by

20 Defendant solely because of the promises made by Defendant in this Plea Agreement.

21 Defendant agrees, however, that for purposes of preparing the Presentence Report, the

22 United States Attorney's Office will provide the United States Probation Office with

23 evidence of all conduct committed by Defendant.

24       Defendant agrees that any charges to be dismissed before or at the time of

25 sentencing were substantially justified in light of the evidence available to the United

26 States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant

27

Plea Agreement - 15
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119

2  (1997).

3      18.    **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that, if

4  Defendant breaches this Plea Agreement: (a) the United States may withdraw from this

5  Plea Agreement and Defendant may be prosecuted for all offenses for which the United

6  States has evidence; (b) Defendant will not oppose any steps taken by the United States

7  to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea

8  Agreement; and/or (c) Defendant waives any objection to the re-institution of any charges

9  that previously were dismissed or any additional charges that had not been prosecuted.

10      Defendant further understands that if, after the date of this Plea Agreement,

11  Defendant should engage in illegal conduct, or conduct that violates any conditions of

12  release or the conditions of confinement (examples of which include, but are not limited

13  to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while

14  pending sentencing, and false statements to law enforcement agents, the Pretrial Services

15  Officer, Probation Officer, or Court), the United States is free under this Plea Agreement

16  to file additional charges against Defendant and/or to seek a sentence that takes such

17  conduct into consideration by requesting the Court to apply additional adjustments or

18  enhancements in its Sentencing Guidelines calculations in order to increase the applicable

19  advisory Guidelines range, and/or by seeking an upward departure or variance from the

20  calculated advisory Guidelines range. Under these circumstances, the United States is

21  free to seek such adjustments, enhancements, departures, and/or variances even if

22  otherwise precluded by the terms of the Plea Agreement.

23      19.    **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant

24  acknowledges that, by entering the guilty plea required by this Plea Agreement,

25  Defendant waives all rights to appeal from Defendant's conviction, and any pretrial

26  rulings of the Court, and any rulings of the Court made prior to entry of the judgment of

27  conviction. This includes, without limitation, any constitutional challenge to the

Plea Agreement - 16
*United States v. Ryan, et al.*, CR24-213-JNW

1   Defendant's conviction. Defendant further agrees that, provided the Court imposes a

2   custodial sentence that is within or below the Sentencing Guidelines range (or the

3   statutory mandatory minimum, if greater than the Guidelines range) as determined by the

4   Court at the time of sentencing, Defendant waives to the full extent of the law any right

5   conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal,

6   the sentence imposed by the Court, including any fine, restitution order, probation or

7   supervised release conditions, or forfeiture order (if applicable). This includes, without

8   limitation, any challenge to any aspect of the sentence and sentencing proceeding,

9   including any statutory or constitutional challenge to how the sentence was imposed.

10  Defendant also agrees that, by entering the guilty plea required by this Plea

11  Agreement, Defendant waives any right to bring a collateral attack against the conviction

12  and sentence, including any restitution order imposed, except as it may relate to the

13  effectiveness of legal representation or a claim of prosecutorial misconduct based on facts

14  unknown or not reasonably discoverable prior to entry of the judgment of conviction.

15  Defendant acknowledges that certain claims, including certain claims for

16  prosecutorial misconduct, will be barred by operation of law by virtue of their guilty plea,

17  independently from this Plea Agreement. This waiver does not preclude Defendant from

18  bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of

19  Defendant's confinement or the decisions of the Bureau of Prisons regarding the

20  execution of Defendant's sentence.

21  If Defendant breaches this Plea Agreement at any time by appealing or collaterally

22  attacking (except as to claims not subject to the waiver, above) the conviction or sentence

23  in any way, the United States may prosecute Defendant for any counts, including those

24  with mandatory minimum sentences, that were dismissed or not charged pursuant to this

25  Plea Agreement.

26  20.    **Voluntariness of Plea.** Defendant agrees that Defendant has entered into

27  this Plea Agreement freely and voluntarily, and that no threats or promises were made to

Plea Agreement - 17
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  induce Defendant to enter a plea of guilty other than the promises contained in this Plea

2  Agreement or set forth on the record at the change of plea hearing in this matter.

3      21.    **Statute of Limitations.** In the event this Plea Agreement is not accepted by

4  the Court for any reason, or Defendant breaches any of the terms of this Plea Agreement,

5  or Defendant withdraws from this Plea Agreement after it has been accepted by the

6  Court, the statute of limitations shall be deemed to have been tolled from the date of the

7  Plea Agreement to: (1) thirty days following the date of non-acceptance of the Plea

8  Agreement by the Court; or (2) thirty days following the date on which a breach of the

9  Plea Agreement by Defendant is discovered by the United States Attorney's Office; or

10  (3) thirty days following the grant of a motion to withdraw from the Plea Agreement.

11  //

12  //

13  //

Plea Agreement - 18
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       22.    **Completeness of Plea Agreement.** The United States and Defendant

2  acknowledge that these terms constitute the entire Plea Agreement between the parties,

3  except as may be set forth on the record at the change of plea hearing in this matter.  This

4  Plea Agreement binds only the United States Attorney's Office for the Western District

5  of Washington.  It does not bind any other United States Attorney's Office or any other

6  office or agency of the United States, or any state or local prosecutor.

7       Dated this 19th day of November , 2024.

9
                  JOHN RYAN

10                 Defendant

12                 TODD MAYBROWN

13                 Attorney for Defendant

15                 AMY JAQUETTE

16                 Assistant United States Attorney

18                 AMANDA MCDOWELL

19                 Assistant United States Attorney

Plea Agreement - 19
*United States v. Ryan, et al.*, CR24-213-JNW

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970